

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PAULA GATTO,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MORTGAGE SPECIALISTS OF<br>ILLINOIS, INC. and WALTER J.<br>KRAJEWSKI,<br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 04 C 5216**<br>**Magistrate Judge Geraldine Soat Brown** |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paula Gatto brought this action alleging that defendants Mortgage Specialists of Illinois, Inc. ("MSI") and Walter J. Krajewski, the President of MSI (collectively, "Defendants"), violated the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Act by failing to compensate Gatto at a rate of one and a half times her regular rate for alleged overtime hours worked. (First Am. Compl. ¶¶ 12, 15.) [Dkt 18.] This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 for Count I, the FLSA claim, and pursuant to 28 U.S.C. § 1367 for the supplemental state law claims. Defendants move for summary judgment on Counts I and II of the First Amended Complaint. [Dkt 21.] The parties have consented to the jurisdiction of a Magistrate Judge. [Dkt 5, 6.] For the reasons set out below, Defendants' motion for summary judgment on Counts I and II is granted. Count I is the sole claim arising under federal law, and the court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). Accordingly, Counts III through VIII are dismissed without prejudice.

## FACTUAL BACKGROUND[1]

### A.   MSI's Business and Employees

MSI, an Illinois corporation, is a licensee in good standing under the Illinois Residential Mortgage License Act of 1987, 205 Ill. Comp. Stat. § 635/1, et seq. (Pl.'s LR Resp. ¶ 2.) MSI operates as a "loan broker" and provides retail "brokerage services" pursuant to the Illinois Residential Mortgage License Act. (*Id.* at ¶ 6.) MSI's services are available to the general public and include assisting local consumers to obtain loans secured by residential real estate in Illinois from approved lenders. (*Id.*) MSI's primary business is finding and closing residential mortgage loans for Illinois consumers. (*Id.* at ¶ 5.) This service included finding and closing loans for purchases of new and existing residences, as well as finding and closing second mortgages and home equity loans, and the refinancing of existing loans. (*Id.*) Specifically, MSI's services include soliciting, processing, and placing consumers' residential mortgage loans with qualified lenders who have entered into agreements with MSI. (*Id.* at ¶ 6.) MSI does not make, buy or sell loans, extend credit, or hold mortgages. (*Id.* at ¶ 9.) MSI is not a bank, a savings and loan, or any other kind of financial institution. (*Id.*) It is also not a finance, credit, or loan company, and does not accept consumer deposits or hold funds. (*Id.*)

In return for its services, MSI is paid a predetermined fee by the lender based on the terms and nature of the loan. (*Id.* at ¶ 6.) None of MSI's services are subcontracted, assigned or for resale.

---

[1] The following facts are taken from Gatto's responses to Defendants' statement of facts filed pursuant to Local Rule 56.1, cited herein as: "Pl.'s LR Resp. ¶ __" [dkt 29], and from the exhibits submitted with those statements or responses to those statements, cited herein as: "Pl.'s LR Ex. __" [dkt 30], "Gatto Decl. ¶ __" [dkt 28], "Gatto Suppl. Decl. ¶ __" [dkt 32], "Defs.' LR Ex. __" [dkt 23], "Krajewski Decl. ¶ __" [dkt 23], and "Defs.' Reply, Krajewski Suppl. Decl. ¶ __" [dkt 31].

(*Id.*) MSI works as an independent contractor, and does not represent either the consumer-borrower or the lender. (*Id.* at ¶ 7.) MSI's entire annual dollar volume of sales comes from its brokerage services as an Illinois Residential Mortgage Act licensee. (*Id.* at ¶ 8.)

MSI employs two types of employees: Loan Processors and Loan Officers.[2] (*Id.* at ¶ 10, Gatto Decl. ¶ 3; Defs.' Reply, Krajewski Suppl. Decl. ¶ 3(a).) Loan Processors are clerical employees who work solely on a salary basis, handling the bulk of the paperwork and details for the office and the loans. (Pl.'s LR Resp. ¶ 10.) Loan Processors generally work no more than 40 hours per week, although they have been paid overtime compensation during periods when they worked more than 40 hours in a week. (*Id.* at ¶ 10; Gatto Decl. ¶ 3; Defs.' Reply, Krajewski Suppl. Decl. ¶ 3(a).)

Loan Officers are salespersons who work solely on a commission basis. (Pl.'s LR Resp. ¶¶ 10, 15.) Loan Officers receive no draw, no salary, no base pay, no hourly wages, and no overtime compensation. (*Id.* at ¶ 15.) They are paid commissions twice a month, and are paid only on loans that are closed with approved lenders. (*Id.*) Loan Officers are responsible for: (a) finding qualified consumers who desire loans by generating their own leads and prospects; (b) matching consumers' needs with offerings from MSI's approved lenders; (c) signing and delivering new loans; (d) explaining to the consumers all facets of the loans; (e) locking in acceptable terms for the consumers;

---

[2] Gatto asserts that there are two types of Loan Officers: "inside" Loan Officers (like Gatto) who receive a receive a 50% commission, and "outside" Loan Officers who receive a commission of 80% or higher. (Pl.'s LR Resp. ¶ 15; Gatto Decl. ¶ 5.) Gatto also claims that there are other relatively minor differences between inside Loan Officers and outside Loan Officers, such as a $100 processing fee paid by inside Loan Officers for each loan, compared with a fee of $350 to $500 paid by outside Loan Officers. (*Id.*) Defendants assert that there is only one type of Loan Officer, and do not make a distinction between inside Loan Officers and outside Loan Officers. (Defs.' Reply, Krajewski Suppl. Decl. ¶ 3(a).) That distinction, if it exists, is not material to the outcome of this motion.

(f) monitoring the processing of the loans by the lenders and MSI's clerical staff; (g) contacting consumers as necessary regarding appraisals and closing figures; and (h) timely closing the loans. (*Id.* at ¶ 11.) Loan Officers can maintain other employment so long as it is not with a lender or another Illinois Residential Mortgage licensee. (Pl.'s LR Resp. ¶ 14.)

**B.    Gatto's Employment with MSI**

Gatto worked as a Loan Officer from approximately July 2002 until August 13, 2003. (Pl.'s LR Resp. ¶ 16; Gatto Decl. ¶ 3.) She was hired and fired by defendant Krajewski, who served as her supervisor during her employment. (Pl.'s LR Resp. ¶ 16.) Gatto was told that her work should be performed at the MSI office, and a desk, computer system, fax, and telephone were made available to her there. (Gatto Decl. ¶ 6; Pl.'s LR Resp. ¶ 17.) Gatto admits that Loan Officers do not have to account for or keep their time or punch a time clock. (Pl.'s LR Resp. ¶ 14.) However, she claims that she was expected to work a minimum of eight hours per day on the premises of MSI. (*Id.*; Gatto Decl. ¶ 4.) According to Gatto, she could either start at 8:00 a.m. and leave at 4:00 p.m. or start at 9:00 a.m. and leave at 5:00 p.m. (Pl.'s LR Resp. ¶ 14; Gatto Decl. ¶ 4.) Gatto states that she was told that if she did not abide by that procedure, her employment would be terminated. (Pl.'s LR Resp. ¶ 21; Gatto Decl. ¶ 7.)[3]

**C.    Gatto's Pay and Time Records**

Gatto's commissions totaled $183,464.90 during the approximately 13.5 months that she

---

[3] Defendants dispute that MSI ever imposed mandatory hours on Gatto or even suggested a minimum number of hours to her. (Defs.' Reply, Krajewski Suppl. Decl. ¶¶ 3(c), 4.) This dispute is not material to the outcome of this motion.

worked for MSI. (Pls.' LR Resp. ¶ 20; Krajewski Decl., Ex. B.) Gatto was paid commissions of not less than $2,645.39 per pay period at all times during her employment as a Loan Officer. (Pl.'s LR Resp. ¶ 20.) Gatto never submitted any list, log, or record of the hours she worked to Krajewski during her employment with MSI, or prior to the filing of this lawsuit. (*Id.* at ¶ 18.) Nor did Gatto ever request payment for overtime during her employment with MSI. (*Id.* at ¶ 19.) Prior to the filing of this lawsuit, MSI had no records indicating that Gatto worked in excess of 40 hours in any particular week. (*Id.* at ¶ 21.)

## LEGAL STANDARD

The court may properly grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Id.* at 255. The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met the initial burden, the non-moving party must designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. The non-moving party must support its contentions with admissible evidence and may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits. *Id.*;

*see also Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994) (non-moving party is required to present evidence of "evidentiary quality" (*i.e.*, admissible documents or attested testimony, such as that found in depositions or in affidavits) demonstrating the existence of a genuine issue of material fact). "[N]either 'the mere existence of some alleged factual dispute between the parties' . . . nor the existence of 'some metaphysical doubt as to the material facts,' is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (quoting *Anderson*, 477 U.S. at 247 and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Thus, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## DISCUSSION

The FLSA states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Certain employees, however, are not covered by the overtime provisions. An employer has the burden of demonstrating that a particular employee is not within the ambit of the overtime provisions. *Klein v. Rush-Presbyterian-Saint Luke's Med. Ctr.*, 990 F.2d 279, 283 (7th Cir. 1993) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)); *Gieg v. DRR, Inc.*, 407 F.3d 1038, 1045 (9th Cir. 2005). Exemptions from the Act are to be narrowly construed, although such generalizations are "at best tie-breakers." *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1177 (7th Cir. 1987); *see also Bankston v. State of Ill.*, 60 F.3d 1249,

1252 (7th Cir. 1995). The FLSA exempts from coverage employees of "a retail or service establishment" whose regular rate of pay is more than one and one-half times the minimum wage and if more than half their compensation for a representative period (not less than one month) represents commissions on goods or services. 29 U.S.C. § 207(i). If Defendants can establish that there is no genuine issue of material fact as to whether Gatto is exempt under that standard, they are entitled to summary judgment. However, before that issue is even reached, Gatto must produce admissible evidence demonstrating, as a matter of just and reasonable inference, that she has performed work for which she would be entitled to overtime compensation. *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 686-88 (1946), *superseded by statute on other grounds.*

The court finds that Defendants are entitled to summary judgment on the FSLA claim for both reasons. First, Gatto has not provided admissible evidence that she has performed work for which she would be entitled to overtime compensation. Alternatively, Defendants have demonstrated that Gatto is exempt from the overtime requirements of the FSLA.

## A.   Gatto's Eligibility for Overtime Compensation

The first issue is whether Gatto worked a sufficient number of hours to be eligible for overtime compensation from Defendants. Although MSI has the duty to "make, keep, and preserve . . . records of the persons employed by [it] and of the wages, hours, and other conditions and practices of employment maintained by [it]," (29 U.S.C. § 211(c)), an employee who brings suit for unpaid overtime compensation has the burden of proving that she performed work for which she was not properly compensated (*Mount Clemens Pottery*, 328 U.S. at 686-87).

[A]n employee has carried out his burden if he proves that he has in fact performed

-7-

work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

*Id.* at 687-88. The Court held that employee timecards showing workweeks longer than forty hours created a just and reasonable inference that the employees may be eligible for overtime compensation. *Id.* at 684, 688, 693.

In this case, there is a threshold matter of what evidence is before the court on this issue. In their initial memorandum, Defendants argued that Gatto had produced no admissible evidence that she had worked more than 40 hours in a week. (Defs.' Mem. at 3.) [Dkt 23.] In her opposition to Defendants' motion for summary judgment (Pl.'s Resp. [dkt 30]), Gatto failed to include any evidence that she ever worked more than forty hours a week, but subsequently moved to supplement the record with a supplemental declaration stating that she worked more than 40 hours during nearly every week between August 2002 and July 2003, and handwritten documents containing the hours she allegedly worked (Pl.'s Mot. Suppl., Gatto Suppl. Decl., Ex. A [Dkt 32]).[4] Gatto does not directly address the issue of whether those documents are admissible evidence, although her declaration suggests a belief that the records fall under the "business records" exception to the hearsay rule. (*See* Gatto Suppl. Decl. ¶¶ 7, 8.)

Gatto's motion to supplement the record was granted, and the record was supplemented by her declaration and Exhibits A and B thereto. [Dkt 40.] However, the court agrees with Defendants

---

[4] Contrary to Defendants' argument, Gatto's initial declaration does not admit that she was not authorized to work any overtime. (Defs.' Reply at 2-3.) Gatto stated that she was "expected to work a *minimum* of an eight hour day . . . ." (Gatto Decl. ¶ 4.)

that Gatto's handwritten documents are inadmissible hearsay and not subject to any exception to the hearsay rule. The documents do not fall under the "business records" exception to the hearsay rule. That exception requires the business records to be "kept in the course of a regularly conducted business activity," and the making of the records to be "the regular practice of that business activity." Fed. R. Evid. 803(6). *Gatto*'s maintenance of her own notes about the time she worked was not in the course of *MSI*'s regularly conducted business activity. (*See* Pl.'s LR Resp. ¶ 14 (admitting that Loan Officers were not required to account for their time); Defs.' Reply, Krajewski Suppl. Decl. ¶ 3(c) (stating that Loan Officers were not required to keep time records or submit reports of their activities).) Moreover, Gatto's supplemental declaration does not provide adequate assurance of the trustworthiness of the handwritten documents. *See Mount Clemens Pottery*, 328 U.S. at 687 (observing that an employee's own records "may be and frequently are untrustworthy"). She says only that while employed she kept a written record of the overtime hours she worked, and that the entries were made "at or near" the time she worked the overtime. (Gatto Suppl. Decl. ¶¶ 4-6.)

Because the notes are not admissible evidence, the only remaining support is Gatto's declaration asserting without specificity that she worked more than 40 hours per week "nearly every week." (Gatto Suppl. Decl. ¶ 3.) That statement, by itself, is not sufficient to create a genuine issue of fact on this element of Gatto's claim. *See e.g.*, *Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997) (stating that conclusory allegations and self-serving affidavits, if not supported by evidence in the record, will not preclude summary judgment); *Cardenas v. Benter Farms*, No. IP 98-1067-C T/G, 2000 WL 1372848 at *2 n. 3 (S.D. Ind. Sept. 19, 2000) (Tinder, J.) (stating that plaintiffs' statements in their affidavits that they worked more hours than their employer credited them with were conclusory and insufficient to create a genuine issue of material fact as to

actual hours worked, although supplemental affidavits providing specific facts underlying the

conclusory assertions were sufficient to allow plaintiffs to advance beyond the summary judgment

phase); *compare Mount Clemens Pottery*, 328 U.S. at 684, 688, 693 (time clock records

demonstrated that the employees had worked more than 40 hours per week).

Because Gatto has not produced sufficient evidence demonstrating a genuine issue of fact

as to her eligibility for overtime compensation, Defendants are entitled to summary judgment on

Count I.


**B.     The Retail or Service Establishment Exemption**

Even if Gatto had satisfied her burden of establishing eligibility for overtime compensation,

Defendants would still be entitled to summary judgment based on the "retail or service

establishment" exemption to the overtime requirements of the FLSA:

> No employer shall be deemed to have violated subsection (a) of this section by
> employing any employee of a retail or service establishment for a workweek in
> excess of the applicable workweek specified therein, if (1) the regular rate of pay of
> such employee is in excess of one and one-half times the minimum hourly rate
> applicable to him under section 206 of this title, and (2) more than half his
> compensation for a representative period (not less than one month) represents
> commissions on goods or services . . . .

29 U.S.C. § 207(i).

There is no dispute regarding two of the requirements for the exemption.  Defendants

maintain, and Gatto does not dispute, that Gatto's regular rate of pay was in excess of one and one-

half times the minimum hourly rate applicable to her under 29 U.S.C. § 206.[5]  (Defs.' Mem. at 6-

---

[5]  Section 206(a)(1) states that "[e]very employer shall pay to each of his employees . . . not less
than $5.15 an hour."  Therefore, Gatto's regular rate of pay must exceed $7.73 per hour ($5.15 x
1.5) to meet that element.  (The minimum wage in Illinois during the relevant time period was

7.) Nor does Gatto dispute that more than half of her pay represented commissions on goods or services.[6] The parties do, however, dispute whether Gatto was employed by a "retail or service establishment." Citing *Mitchell v. Kentucky Financial Co., Inc.*, 359 U.S. 290 (1959), Gatto contends that MSI cannot be a "retail or service establishment" because it is in the "financial industry." (Pl.'s Resp. at 3.) For the following reasons, the court concludes that MSI is a "retail or service establishment" under § 207(i), and that the exemption defeats Gatto's claim for overtime compensation.

### 1.    The Term "Retail or Service Establishment"

Gatto's argument relies on the Supreme Court's interpretation of the FLSA in *Mitchell*. However, the FLSA as it currently exists is different from that considered by the Court in *Mitchell* in 1959. The FLSA then contained a definition of "retail or service establishment," but the current version of the FLSA does not. In 1949, the FLSA had been amended to include a definition of "retail or service establishment" in 29 U.S.C. § 213(a)(2): "an establishment 75 per centum of

---

not more than $5.15 per hour.) *See* 820 Ill. Comp. Stat. § 105/4. Gatto admitted receiving total commissions of $183,464.90 between July 2002 and August 13, 2003, a 58-week period, and at least $2,645.39 per pay period. (Pl.'s LR Resp. ¶ 20.) In her complaint, Gatto stated that she "frequently" worked 15 hours per day and "worked weekends when it was necessary." (First Am. Compl. ¶ 18.) Even if it were assumed that Gatto regularly worked 15 hours per day seven days a week, equaling a work week of 105 hours for every week during that 58-week period, Gatto would have earned an average of $30.13 per hour ($183,464.90 / (58 weeks x 105 hours per week)) – well above the $7.73 hourly rate required. *See Schwind v. EW & Assocs., Inc.*, 371 F. Supp. 2d 560, 568 n. 8 (S.D.N.Y. 2005) (calculating plaintiff's regular rate of pay by averaging the commissions received by plaintiff in a year and allocating the average to each week, and then dividing that figure by a maximum number of hours that could have been worked).

[6] Gatto admitted that 100% of her compensation represented commissions earned by her as a Loan Officer at MSI. (Pl.'s LR Resp. ¶ 15.)

whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry . . . ." *Mitchell*, 359 U.S. at 291. The issue in *Mitchell* was whether a business that made personal loans to individuals and purchased conditional sales contracts from furniture and appliance dealers met that definition. *Id.* at 290, 292. The Court looked to regulations that had been promulgated under an even earlier version of the term "retail or service establishment": "[t]he Administrator early ruled [under the prior version] that personal loan companies and other business entities in what may broadly be called the 'financial industry' were not within the scope of that exemption." *Id.* at 292. The Court quoted legislative history to the effect that the definition "does not exempt banks, insurance companies, building and loan associations, credit companies, [and] newspapers, . . . because there is no concept of retail selling or servicing in these industries," and concluded that the 1949 amendment was not intended to include the "financial industry" in the exemption. *Id.* at 295 (citation omitted).

In 1961, two years after the *Mitchell* decision, § 207(i) was added to the FLSA (then as subsection (h), later renumbered). 29 U.S.C. § 207(I), Hist. & Stat. Notes, 1961 Amendments. Congress stated that the term "retail or service establishment" should be defined as set out in § 213(a)(2). 29 C.F.R. § 779.24; *Reich v. Delcorp*, 3 F.3d 1181, 1183 (8th Cir. 1993) (citing 29 C.F.R. § 779.411 (1992)). The Department of Labor ("DOL") promulgated regulations interpreting the term "retail or service establishment" expressly based on the definition in § 213(a)(2). 29 C.F.R. § 779.24. The DOL also promulgated a partial list of establishments "to which the retail concept does not apply," including "[b]anks (both commercial and savings)," "[c]redit companies, including small loan and personal loan companies" and "[f]inance companies." 29 C.F.R. § 779.317 (citing *Mitchell*).

However, Congress repealed § 213(a)(2) in 1989. *See* Pub. L. No. 101-157, § 3(c)(1), 103 Stat. 938, 939 (Nov. 17, 1989). In its place, Congress substituted a provision that exempts all small enterprises with a total annual sales volume of less than $500,000 from the FLSA's requirements. 29 U.S.C. § 203(s)(1)(A)(ii); *see Reich v. Delcorp*, 3 F.3d at 1183. The House Report on the legislation states that the amendment replaces "several confusing standards." H.R. Rpt. 101-260 at 39 (Sept 26, 1989). Section 207(i) was retained, but the FLSA no longer contains a definition of "retail and service establishment." Notably, the DOL has not adopted revised regulations; its regulations relating to "retail and service establishment" continue to refer to the now-repealed § 213(a)(2). *See* 29 C.F.R. § 779.24.

The Seventh Circuit has not addressed the issue of whether the definition formerly found in § 213(a)(2), and the regulations and case law built upon it, should continue to be applied in determining what qualifies as a "retail or service establishment" under § 207(i)'s exemption. A number of courts of appeals have continued to apply former § 213(a)(2)'s definition, concluding (notwithstanding the repeal of § 213(a)(2)) that no congressional intent has been shown to modify the definition. For example, in *Reich v. Delcorp*, 3 F.3d at 1183, the Eighth Circuit stated, "[a]bsent specific congressional intent, we will not conclude that Congress retained the term 'retail or service establishment' in § 207(i) yet at the same time discarded thirty years of established meaning." *Accord Gieg*, 407 F.3d at 1047 (citing *Reich v. Delcorp*, and stating that "[a]lthough § 213(a)(2) was later repealed, courts have continued to apply its definition of 'retail or service establishment' to

Section 207(i)").[7] Some district courts have followed that approach.[8]

Because the Seventh Circuit has not spoken on this issue, this Court will follow the precedent in the Eighth and Ninth Circuits and apply the definition set forth in § 213(a)(2) and the regulations built upon it.

### 2.    Application to MSI

#### a.    The "Financial Industry"

Gatto contends that MSI cannot qualify for the exemption because it is part of the financial industry, and, she argues, under *Mitchell*, an employer in the financial industry can never be a "retail or service establishment." (Pl.'s Resp. at 3.) Assuming, *arguendo*, that the Court's conclusion in *Mitchell* that the "financial industry" is not exempted from the FLSA remains viable after the repeal of § 213(a)(2), MSI is not precluded from invoking the exemption, because MSI is not part of the "financial industry" as that term was used in *Mitchell*.

The employer in *Mitchell* made loans to individuals and purchased conditional sales

---

[7] In an earlier decision, the Ninth Circuit had applied § 213(a)(2)'s definition of "retail or service establishment" without discussing the 1989 legislation. *Martin v. Refrigeration Sch., Inc.*, 968 F.2d 3, 5, 5 n. 1 (9th Cir. 1992).

[8] *Schwind*, 371 F. Supp. 2d at 564 ("Although [the] definition of 'retail and service establishment' is found in 29 U.S.C. § 213(a)(2), which has been repealed, this definition still remains in effect for purposes of 29 U.S.C. § 207(i)."); *Barnett v. Washington Mutual Bank, F.A.*, No. C 03-00753 CRB, 2004 WL 1753400 at *2 (N.D. Cal. Aug. 5, 2004) (Breyer, J.); *Collins v. Horizon Training Ctrs., L.P.*, o. Civ.A. 3:02CV1310-L, 2003 WL 22388448 at *3 n. 1 (N.D. Tex. Sept. 30, 2003) (Lindsay, J.); *Bennett v. SLT/TAG Inc.*, No. Civ. CV02-65-HU, 2003 WL 23531402 at *5 (D. Or. May 8, 2003) (Jones, J.); *Casas v. Conseco Fin. Corp.*, No. Civ.00-1512 (JRT/SRN), 2002 WL 507059 at *3-5 (D. Minn. March 31, 2002) (Tunheim, J.); *Reich v. Cruises Only, Inc.*, No. 95-660-CIV-ORL-19, 1997 WL 1507504 at *2 (M.D. Fla. June 5, 1997) (Fawsett, J.).

contracts. 359 U.S. at 290.  In contrast, it is undisputed that MSI does not make, buy or sell loans;

extend credit; or hold mortgages. (Pl.'s LR Resp. ¶ 9.)  It is also undisputed that MSI is not a bank,

a savings and loan, a finance, credit, or loan company, or any other kind of financial institution, and

does not accept consumer deposits or hold funds (*id.*), unlike the banks, credit companies, and

finance companies listed as financial industry establishments in 29 C.F.R. § 779.317.[9]  Gatto admits

that MSI operates as a loan broker under the Illinois Residential Mortgage License Act.  (Pl.'s LR

Resp. ¶ 6.)  MSI is licensed under that Act.  (*Id.* at ¶ 2.)  "Loan brokering" or "brokerage service"

is defined in that Act to mean:

> the act of helping to obtain from another entity, for a borrower, a loan secured by
> residential real estate situated in Illinois or assisting a borrower in obtaining a loan
> secured by residential real estate situated in Illinois in return for consideration to be
> paid by either the borrower or the lender including, but not limited to, contracting for
> the delivery of residential mortgage loans to a third party lender and soliciting,
> processing, placing, or negotiating residential mortgage loans.

205 Ill. Comp. Stat. 635/1-4.  As a broker, MSI assists in obtaining the loan, but does not provide

the loan.  (*See* Pl.'s LR Resp. ¶ 9.)

---

[9] Gatto's supplemental submission includes a print-out from MSI's website, including the
statement, "Mortgage Specialists Of Illinois, Inc. is your mortgage lender." (Pl.'s LR Ex. B at 1.)
According to Gatto's supplemental declaration, she obtained that printout from MSI's website on
June 29, 2005. (Gatto Suppl. Decl. ¶ 10.)  She further states that by going to an internet archive,
she was able to find a substantially similar statement for MSI's website of May 4, 2000. (*Id.* at ¶
11.)  Notably, neither of those dates was during the time that Gatto worked for MSI, which was
between July 2002 and August 2003. (Pl.'s LR Resp ¶ 16; Gatto Decl ¶ 3.)  More importantly,
Gatto previously admitted that MSI does not make loans. (Pl.'s LR Resp. ¶ 9.)  The text of the
website print-out does not constitute, as Gatto suggests, an admission by MSI that it is a lender
contrary to Gatto's admission in her Local Rule statement.  The website printout does not say
that MSI would provide any loans.  The content is consistent with MSI's role as a mortgage loan
broker, not a lender.  Exhibit B is not evidence that would allow a reasonable finder of fact to
conclude that MSI lends money.

Those facts also distinguish MSI from the employer in *Casas*. 2002 WL 507059 at *5 (employer was engaged in the same business as the employer in *Mitchell*: "lending money to individual consumers"). The fact that MSI's brokerage services relate to loans does not necessarily preclude it from qualifying for the exemption as a "retail or service establishment." *See Gieg*, 407 F.3d 1038, 1052-53 (holding that employees whose commissions derive from financing and insurance aspects of retail automobile sales are exempt from overtime).

Further support for this conclusion is supplied by another section of the Illinois Residential Mortgage License Act. That Act's statement of purpose describes the "significant changes" that have taken place in residential mortgage lending in recent years, including the fact that "[r]esidential mortgage lenders of every type have increasingly relied on *nonfinancial intermediaries, such as mortgage brokers*, to find customers." 205 Ill. Comp. Stat. 635/1-2 (emphasis added). MSI is not part of the "financial industry" as that term was used in *Mitchell*.


b.    *Application of "Retail or Service Establishment"*

As the Ninth Circuit observed, "[t]he meaning of the term 'retail establishment' is not obvious without further definition, and the statutory definition [in § 213(a)(2)] is of little assistance." *Refrigeration School*, 968 F.3d at 5; *see also id.* at 5 n. 1 (the definition "provides little guidance in determining the nature of the 'retail' concept as an initial matter"). The court must defer to the DOL's regulations, as long as they represent a reasonable construction of the statute. *Id.* at 5 (citing *Chevron USA, Inc. v. NRDC*, 467 U.S. 837, 844 (1984)).

As discussed above, the DOL has created categories of businesses that lack a "retail

-16-

concept."[10] The DOL's regulations list "custom house [brokers]; freight brokers; insurance brokers, stock or commodity brokers" as lacking a retail concept. 29 C.F.R. § 779.317. However, they do not contain a listing for "mortgage brokers" like MSI. Defendants invoke the statutory construction canon *expressio unius est exclusio alterius* (*see* Defs.' Reply at 5), which has force "when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence," (*Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)). The DOL's list in §779.317 does not preclude MSI from the claiming the exemption.

In addition to the lists, the DOL has promulgated a description of the "characteristics . . . of retail or service establishments":

> Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process.

29 C.F.R. § 779.318(a).

As applied to a particular employer, courts have viewed this regulation as having three components: (1) the employer sells to the general public; (2) it serves the everyday needs of the community; and (3) it is at the end of the stream of distribution and does not take part in the manufacturing process. *Collins*, 2003 WL 22388448 at *6; *Cruises Only, Inc.*, 1997 WL 1507504

---

[10] Those categories haven not been uniformly accepted by courts. *See e.g.*, *Refrigeration School*, 968 F.3d at 7 (finding no rational basis for the DOL's categorizing all schools as non-retail except those serving handicapped or gifted students); *Cruises Only, Inc.*, 1997 WL 1507504 at *2 (finding arbitrary and irrational DOL's listing of travel agencies as lacking a retail concept).

at *3.

It is undisputed that MSI sells its services to the general public, satisfying the first component. (Pl.'s LR Resp. ¶ 6.) In addition, MSI meets the second component because it serves the everyday needs of the community, as demonstrated by the fact that the Residential Mortgage License Act was enacted because of the impact of such services on "the neighborhoods and communities of [Illinois], its homeowners and potential homeowners." 205 Ill. Comp. Stat. § 635/1-2(b) ("The purpose of this Act is to regulate residential mortgage lending to benefit our citizens."). Although Gatto argues that obtaining a mortgage loan is not an everyday occurrence (*see* Pl.'s Resp. at 7), the regulation cannot be interpreted to mean that a consumer must use the establishment every day. That would be inconsistent with the DOL's listing of automobile dealerships, among others, as retail or service establishments. *See* 29 C.F.R. § 779.320; *accord Cruises Only, Inc.*, 1997 WL 1507504 at *4 (stating that the regulation "should not be interpreted to mean that a retail or service establishment must be used by everyone in the community on a daily basis," noting that the regulation lists funeral homes, cemeteries, and taxidermists as having a retail concept although none of these could be used every day by anyone); *Collins*, 2003 WL 22388448 at *7 (holding that computer training serves the "everyday needs" of more than half of all households).

The third component is that the goods or services at issue are at the very end of the stream of distribution. In the case of a service establishment, the "end of the distribution stream" has been described as "providing a service with a distinct beginning and end." *See Cruises Only, Inc.*, 1997 WL 1507504 at *5. MSI satisfies that standard because it is hired by purchasers of new and existing residences to perform the discreet tasks of finding and closing loans, second mortgages, and home equity loans and the refinancing of existing loans. (Pl.'s LR Resp. ¶ 5.) Once the loan has been

-18-

closed or refinanced, MSI's job is done.  Additionally, Gatto admits that MSI's services are not for

resale (Pl.'s LR Resp. ¶ 6.), a factor which has been found by courts to indicate that the services are

at the end of the distribution stream.  *See e.g., Cruises Only, Inc.*, 1997 WL 1507504 at *4; *Schwind*,

371 F. Supp. 2d at 566.  Thus, MSI qualifies as a retail or service establishment under C.F.R.

§ 779.318.


c.    *Whether MSI's Sales Are Recognized as Retail in its Particular Industry*

The definition of "retail or service establishment" in § 213(a)(2) requires that the business'

goods or services be "recognized as retail sales or services in [its] particular industry."  *See Mitchell*,

359 U.S. at 291.  Regarding this requirement of § 213(a)(2), the DOL regulation observes that:

> The express terms of the statutory provision requires the "recognition" to be "in" the
> industry and not "by" the industry.  Thus, the basis for the determination as to what
> is recognized as retail "in the particular industry" is wider and greater than the views
> of an employer in a trade or business, or an association of such employers. ...  Such
> a determination must take into consideration the well-settled habits of business,
> traditional understanding and common knowledge.  These involve the understanding
> and knowledge of the purchaser as well as the seller, the wholesaler as well as the
> retailer, the employee as well as the employer, and private and governmental research
> and statistical organizations.  The understanding of all these and others who have
> knowledge of recognized classifications in an industry, would all be relevant in the
> determination of the question.

29 C.F.R. § 779.324.

Here, the status of a mortgage broker as "retail" in the industry is supported by the policy

statement of the Illinois Residential Mortgage License Act, quoted above.  The services that MSI

provides as a residential mortgage broker are regulated because they deal directly with consumers,

the "retail" aspect of the industry.  *See* 205 Ill. Comp. Stat. § 635/1-2(a, b).

-19-

####    d.    *The Legislative Purpose and Policy Considerations of the FLSA*

Finally, the legislative purpose and policy considerations of the FLSA also support a conclusion that Gatto is not entitled to overtime compensation. In *Mechmet*, 825 F.2d at 1177, the Seventh Circuit observed that overtime statutes were designed to protect "marginal, non-unionized workers," and that § 207(i) was designed to exempt commissioned employees of a "big-ticket department." The court's observations about the difficulties of requiring overtime pay for such "big-ticket" commissioned employees apply directly to Gatto's situation at MSI:

> It would not be easy for the employer to cope with the irregular conditions of the salesman's job by placing a 40-hour ceiling on each salesman's weekly work and then hiring additional salesmen to take up the slack. If instead the employer paid the salesman time and a half for overtime during the busy weeks, this would just amplify the weekly fluctuations in the salesman's earnings, especially since, in the long run, either the base pay (if above the minimum wage), or the commission rate, or both, would decline, to offset the overtime premium.

*Id.* at 1176-77; *see also Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 307 (7th Cir. 1986) (stating that "[c]ommission salesm[e]n have fluctuating hours and income, and it is unlikely that Congress meant to require employers to pay overtime in the lean weeks when the fat weeks more than make up.").

Consistent with that observation, Gatto's earnings fluctuated considerably from pay period to pay period. For example, Gatto received $10,400.79 during the pay period ending February 15, 2003, but only $4,983.57 during the pay period ending February 28, 2003. (Krajewski Decl., Ex. B.) But even assuming that she worked 15 hours of overtime a week, Gatto was paid an average of at least $30.13 per hour, for a total of $183,464.90 in just over one year of work. (*See* n. 5, *above*.) She was an employee involved in the "big-ticket" sales which § 207(i) was intended to exempt.

## CONCLUSION

Gatto has not produced admissible evidence demonstrating a genuine issue of material fact as to her eligibility for overtime compensation, and Defendants have shown that there is no genuine issue of material fact as to whether MSI is exempt from paying Gatto overtime compensation under the retail or service establishment exemption. Thus, Defendants are entitled to summary judgment on Count I of the complaint (the FLSA claim). Because an employer who is exempt from paying overtime compensation to a salesperson under the FLSA is automatically exempt under the Illinois Minimum Wage Act as well, Defendants are also entitled to summary judgment on Count II of the complaint. *See* 820 ILCS § 105/4a(2)(F); *Mechmet*, 825 F.2d at 1178.

Accordingly, Defendants' Motion for Summary Judgment on Counts I and II of the First Amended Complaint is granted. The court declines to retain supplemental jurisdiction over the remaining state law claims, and Counts III through VIII are dismissed without prejudice pursuant to 28 U.S.C. 1367 (c)(3).

**IT IS SO ORDERED.**

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED:  March 13, 2006**



-21-